UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-cv-00055-TBR

**CC METALS & ALLOYS, LLC**                                                                 **PLAINTIFF**

v.

**AMERICAN INTERNATIONAL SPECIALTY**
**LINES INSURANCE COMPANY,** *et al.*                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Fortitude Reinsurance Company Ltd.'s ("Fortitude Re") Motion to Dismiss. [DN 17]. Plaintiff CC Metals & Alloys, LLC ("CCMA") responded, [DN 27], and Fortitude Re replied. [DN 33]. As such, this matter is ripe for adjudication. For reasons stated herein, Defendant Fortitude Re's Motion to Dismiss is **DENIED**. [DN 17].

### I. Background

This case involves an insurance coverage dispute between CCMA and the Defendants "with respect to losses suffered by CCMA arising from pollution-related clean-up costs at its Calvert City, Kentucky site." [DN 1 at 2]. CCMA is a limited liability company that produces and supplies ferrosilicon alloys used in the manufacturing of iron and steel. *Id.* at 6. In 2003, American International Specialty Lines Insurance Company[1] ("AIG Specialty") issued CCMA a Pollution Legal Liability Select Clean-Up Cost Cap Insurance Policy ("Policy"), specifically for "Pollution Legal Liability Coverage" and "OM&M Cost Cap Coverage" until December 2023, and "Capital Expenditure Cost Cap Coverage" until December 2010. [DN 1-1 at 2]. CCMA has included Fortitude Re as a party to this action based on information and belief that AIG Specialty has

---

[1] Also known as AIG Specialty Insurance Company

1

"transferred all assets, liabilities, and obligations related to the Policy at issue here to Defendant Fortitude Re." [DN 1 at 6].

CCMA's Complaint states that the Policy was designed to both cover the costs to implement and comply with the Remedial Plan—created by CCMA and LAN Associates. Inc ("LAN"), a company that "provides environmental, health, safety, and land planning/development services"—and cover any future liabilities CCMA may face based on alleged pollution conditions. *Id.* at 3. The Remedial Plan was used to clean up pollutants at the Calvert City location and according to CCMA "[f]or almost 18 years following the implementation of the Remedial Plan and issuance of the Policy by AIG, the Defendant Insurers paid, on a routine basis, all submitted costs incurred by CCMA to implement the Remedial Plan." *Id.* In October 2020, however, CCMA alleges that AIG Specialty "changed its position and began to deny reasonable and necessary OM&M Costs incurred by CCMA to comply with the Remedial Plan." *Id.*

CCMA's complaint also claims that the Division of Waste Management for the Kentucky Department for Environmental Protection ("KDEP") conducted an investigation into the potential pollutants in the riverbank near CCMA's Calvert City location which resulted in the need for LAN to "formulate[] and implement[] a characterization plan to assess environmental risk at the Site." *Id.* at 4. After KDEP approved the Final Site Characterization and Risk Assessment Report created by LAN, CCMA contends that they received "an official written demand on CCMA requesting that CCMA submit a corrective action plan to ensure compliance with the Remedial Plan." *Id.* The Complaint states that "on March 29, 2021, CCMA gave written notice to AIG that CCMA/LAN must prepare a corrective action plan for the Site in response to the KDEP Claim." *Id.* CCMA states that KDEP approved the corrective action plan ("Management Plan") which planned to "manage pollutants at the Site, eliminate exposure/risk to contaminants of potential concern,

reduce the formation of perched water, and stop erosional transport of materials and maintain existing engineering controls." *Id.* at 5. CCMA's complaint stems from the assertion that "Defendant Insurers have failed and or refused, in breach of the Policy, to assess whether PLL Coverage extends to the KDEP Claim" after "the Defendants disclaimed any duty to provide coverage opinion prior to the work being performed." *Id.*

CCMA's causes of action against both Defendants include declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing, and violation of the Unfair Claims Settlement Practices Act under KRS § 304.12-230. [DN 1]. Fortitude Re now moves to dismiss all CCMA's claims against it based on a lack of contractual agreement between CCMA and Fortitude. [DN 17].

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may assert by motion the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district

court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79, 129 S.Ct. 1937).

### III.  Discussion

In its Motion to Dismiss, Fortitude Re argues that all causes of action against it fail as a matter of law and must be dismissed because "[u]nder Kentucky law, Fortitude Re has no contractual relationship with CCMA and owes it no contractual obligations because Fortitude Re is merely a reinsurer of the policy issued to CCMA." [DN 17 at 1]. Conversely, CCMA argues that

> [t]he Motion must be denied because it presents 'evidence' that may not be considered at this stage[,] is procedurally improper, raises a fact question that cannot properly be resolved at this stage, and asks this Court to take all CCMA's well-pled facts as *untrue* and to draw all inferences *not* in favor of CCMA but in favor of Fortitude Re.

[DN 27 at 6 (emphasis in original)]. The question the Court must answer then is whether CCMA's complaint provides well-pleaded facts to support "more than the mere possibility of misconduct" by Fortitude Re. CCMA's Complaint provides a plethora of facts regarding CCMA and AIG Specialty's relationship, the Policy at issue, as well as assertions of liability for the Defendants collectively. [DN 1]. However, Fortitude Re is only individually mentioned when CCMA asserts that "[o]n information and belief, AIG Specialty transferred all assets, liabilities, and obligations related to the Policy at issue here to Defendant Fortitude Re and thus Fortitude Re is the successor-

in-interest to AIG Specialty as to all rights and obligations under the Policy." [DN 1 at 6]. CCMA fails to provide any factual basis to support this conclusion.

The Sixth Circuit's stance regarding claims based on "information and belief" has been articulated by another court in this circuit:

> Indeed, the Sixth Circuit has held that statements based on "information and belief" are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Such allegations are "naked assertions devoid of further factual enhancement," *id.* (quoting *Iqbal*, 556 U.S. at 678), which "contribute nothing to the sufficiency of the complaint," *id.* "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (affirming dismissal of a suit based partly on allegations pleaded "upon information and belief").

*Great Lakes Acquisition Corp. v. Deary*, No. 19-11502, 2019 WL 4919148, at *2 (E.D. Mich. Oct. 4, 2019). Pleadings based on information and belief may, however, be accepted in certain situations: "The *Twombly* plausibility standard ... does not prevent a plaintiff from 'pleading facts alleged on information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Apex Tool Grp., LLC v. DMTCO, LLC*, No. 3:13-CV-372, 2014 WL 6748344, at *9 (S.D. Ohio Nov. 26, 2014) (internal citations omitted) (collecting cases).

In the simplest of summaries, Fortitude Re moves for dismissal as a party in this case because CCMA's complaint does not allege a contractual relationship between Fortitude Re and CCMA which is required for all claims against Fortitude Re. [DN 17]. Conversely, CCMA argues that a contractual relationship—potentially shifting liability from AGI Specialty to Fortitude Re— is asserted, making dismissal inappropriate at this time, because CCMA is entitled to name any party who may be a party-in-interest. [DN 27 at 5]. The answer to this dispute turns on *Millennium*

*Petrochemicals, Inc. v. C.G. Jago*, 50 F. Supp. 2d 654 (W.D. Ky. 1999), a case discussed by both parties.

In *Millennium*, an insured sued its insurer and reinsurer for breach of contract, breach of the covenant of good faith and fair dealing, and violations of Kentucky's UCSPA. *Id.* at 655–56. The reinsurer filed a motion to dismiss, arguing that a policyholder has no right of action against its insurer's reinsurer. *See id.* at 659. The insured claimed that it did have a private right of action because the reinsurer was a "successor-in-interest" to the insurer, meaning that the reinsurer was not immune from suit because it dealt directly with the insured by collecting premiums, negotiating settlements, and paying claims. *See id.* at 659–60. The *Millennium* court determined that reinsurers do not enjoy blanket immunity for claims filed by the insured; an insured can bring certain claims against a reinsurer who "assume[d] the insurance contracts," but not against a reinsurer who "assumed the responsibility for paying the liabilities arising under the insurance contracts." *Id.* at 658. Simply, a reinsurer is not liable to a third-party unless explicitly assuming the insurance company's contract with the third-party, they are liable, however, to insure the insurance company itself, based on the language in the re-insurance contract. After "thoroughly reviewing the . . . contracts" in question, the court and found that "[a]s a matter of law" the reinsurer "did not assume [the insurer's] liabilities." *Id.* at 660.

Unlike in *Millennium*, the reinsurance contract between AIG Specialty and Fortitude Re has not been provided to the Court. Without the explicit language of the contract, the Court cannot "thoroughly review[] the . . . contract[]" and make a determination regarding potential liability. *Id.* True, CCMA's factual support regarding Fortitude Re's potential liability leaves much to be desired. But that lack of detail is partly due to CCMA not having access to the contract—the only factual evidence to either support or discredit CCMA's assertion is the reinsurance contract in

6

Defendants' possession. [DN 27 at 9]. That is the type of evidence that might come out in discovery. Therefore, the Court will be better equipped at the summary judgment stage to determine whether Fortitude Re "assume[d] the insurance contract[]" in question. *Millennium*, 50 F. Supp. 2d at 658. When looking at CCMA's complaint as a whole, and taking all assertions as true, CCMA has provided a plausible argument for Fortitude Re's potential liability. Accordingly, dismissal of Fortitude Re as a party to this action is not appropriate at this time.

### IV.     Conclusion

For the reasons stated, **IT IS HEREBY ORDERED** that Defendant Fortitude Re's Motion to Dismiss is **DENIED**. [DN 17].

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: counsel

August 26, 2022